IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MI'KAYLA ALSTON,<br><br>*Defendant.* | No. 1:24-mj-486 |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT

I, Jesse A. Adams, being first duly sworn, hereby depose and state as follows:

### Background

1. I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since 2018. I am currently assigned to the Washington Field Division's Falls Church Group II. My assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, thefts and burglaries of Federal Firearms Licensees, commercial robberies, and armed narcotics trafficking. Prior to my appointment as an ATF agent, I was a sworn law enforcement officer with the United States Marshals Service for over four years, and a sworn law enforcement officer with the Commonwealth of Virginia for over seven years.

2. I submit this affidavit in support of a criminal complaint and arrest warrant charging that from at least on or about September 11, 2024, through at least on or about December 3, 2024, in the City of Alexandria, Virginia, within the Eastern District of Virginia, and elsewhere, MI'KAYLA ALSTON and INDIVIDUAL 1 conspired, confederated, and agreed, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, to provide Suboxone, a narcotic drug, to

1

a prisoner of a facility in which persons are held in custody pursuant to a contract or agreement with the Attorney General, in violation of Title 18, United States Code, Sections 371, and 1791(a)(1) and (b)(1); and that on or about October 21, 2024, in the City of Alexandria, Virginia, within the Eastern District of Virginia, ALSTON, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, attempted to provide and provided Suboxone, a narcotic drug, to a prisoner of a facility in which persons are held in custody pursuant to a contract or agreement with the Attorney General, in violation of Title 18, United States Code, Sections 1791(a)(1) and (b)(1).

3. The facts in this affidavit are based on my review of reports, analyses, and video and audio recordings provided by the Alexandria Sheriff's Office's Investigations, Policy and Oversight Unit, my conversations with investigators from that unit, my personal observations, and my training and experience. This affidavit contains only the information necessary to support probable cause. It is not intended to include each and every fact and matter observed by me or known to the United States.

## Probable Cause

*Alston Delivers Suboxone Hidden Within Glasses to the ADC*

4. On or about October 21, 2024, at 4:32 p.m., ALSTON entered the Alexandria Adult Detention Center ("ADC") through the facility's pedestrian gate.



5.    ALSTON then walked into the visitation center. Inside, she told a deputy sheriff that she was there to drop off a pair of prescription reading glasses for INDIVIDUAL 1, an inmate at the facility. ALSTON told the deputy that she had already spoken with the ADC's medical staff about dropping off the glasses.



6.    After examining the glasses, the deputy directed ALSTON to meet with an ADC nurse inside the facility's lobby. There, ALSTON provided the glasses to the nurse. The nurse examined the glasses and brought them into the facility at approximately 5:00 p.m.



7. The nurse provided the glasses to a supervisory deputy sheriff at approximately 5:15 p.m. The supervisor noticed that the glasses were unusual and he secured them in his office overnight so that he could examine them further.

8. On the following day, October 22, 2024, the supervisory deputy sheriff examined the glasses more closely. The supervisor noticed that the glasses had cutouts. He attempted to depress the cutouts to see if they moved, but neither piece moved with manual pressure. There appeared to be an unknown substance, likely, glue, on the glasses' hinges. The substance was dried and appeared as though it could be part of the manufacturing process. The supervisor directed another deputy sheriff to x-ray the glasses. The x-ray did not yield any abnormalities.

9. During the day, INDIVIDUAL 1 asked about the glasses that "[his] girl brought in." He said that he "need[ed] them to see."

10. Due to not finding anything wrong with the glasses, a deputy sheriff was authorized to provide the glasses to INDIVIDUAL 1 and did so.

11. INDIVIDUAL 1 took the glasses from the deputy and placed the glasses into his waistband. He did not try them on or inspect them. INDIVIDUAL 1 then walked to his cell, spent 26 seconds in his cell, and then left his cell without his glasses.

12. The deputy sheriff who had provided the glasses to INDIVIDUAL 1 thought that the glasses themselves and INDIVIDUAL 1's reaction to receiving them was odd. The deputy searched the internet for information about the name brand listed on the side of the glasses, *Vicerays*. That company's website describes their product as "Sunglasses Designed with Hidden Storage" that is "Designed for wanderers who travel light and lit. Simply remove the sunglass arms, fill the hidden storage compartment, and hit the road."

13. Based on this additional information, the deputy took the glasses back. The time lapse from when the deputy provided the glasses to INDIVIDUAL 1 to when the deputy took them back was approximately three-and-a-half minutes.

14. Investigators from the Alexandria Sheriff's Office then examined the glasses further and watched several videos on how the manufacturer intended for the glasses to function.[1] The glasses' "arms" could not be opened manually. Investigators then attempted to open the glasses using a handcuff key to depress the locking mechanism. That, too, did not work. An investigator then applied hot water over the hinges. Likewise, that did not yield success. Finally, after continuous force, a supervisory deputy sheriff was able to release one "arm." The second arm was released later after additional force was applied.[2]



---

[1] The glasses are designed so that the "arms" of the glasses can be removed at the hinges, material can be placed within the hollow "arms," and then the "arms" can be reattached to front of the frame.

[2] There is no indication of any material change in the glasses from when ALSTON brought them into the ADC and when investigators forced them open. I come to this conclusion given the amount of force needed to eventually open the hidden compartments, as described above.

15. Inside, investigators located small strips of material that are consistent in all respects with pharmaceutical Suboxone strips.[3] A closer image of a seized Suboxone strip is the first image pictured below; a known image of Suboxone is depicted in the second picture.





16. I know, based on my training and experience, that individuals often seek to smuggle narcotics into jails and prisons, both for personal use and to sell inside the facility, including Suboxone.

---

[3] The seized substance is pending testing at Virginia's Department of Forensic Science.

*Historical Investigation*

17. The ADC's inmates are permitted to place telephone and video calls to individuals outside the facility. The communications system warns participants that this communication is recorded.

18. As part of the investigation, the Alexandria Sheriff's Office's Investigations, Policy and Oversight Unit reviewed communications between ALSTON and INDIVIDUAL 1.

19. ALSTON and INDIVIDUAL 1 had their first phone conversation on September 11, 2024, the first date on which INDIVIDUAL 1 was held at the ADC. During this call, ALSTON told INDIVIDUAL 1 that he "can make some money."

20. INDIVIDUAL 1 told ALSTON that the ADC staff would take his glasses because they contained metal. He told ALSTON to bring some glasses but to make sure that they didn't look suspicious.

21. In a video call on September 14, 2024, ALSTON showed INDIVIDUAL 1 the *Vicerays* glasses.[4]



---

[4] Investigators believe that the glasses that ALSTON wore in this picture do not have lenses in them. They come to this conclusion because: (1) the *Vicerays* website does not provide glasses with clear lenses in them; and (2) ALSTON and INDIVIDUAL 1 discussed placing lenses into the glasses, as described below.

22. In a September 29, 2024 video call, ALSTON and INDIVIDUAL 1 discussed removing lenses from other glasses and placing them into the *Vicerays'* frame. ALSTON removed a lens from another pair of glasses and placed it in the *Vicerays'* frame, but the lens was too big. INDIVIDUAL 1 directed ALSTON to use sandpaper to make the lens fit in the frame.



23. On October 5, 2024, INDIVIDUAL 1 told ALSTON that her "mission tomorrow" was to find an eyeglasses doctor.

24. On October 11, 2024, ALSTON told INDIVIDUAL 1 that the glasses squeak, but look normal.

25. On October 21, 2024, at 1:17 p.m., ALSTON showed the completed glasses to INDIVIDUAL 1. During this video call, INDIVIDUAL 1 asked ALSTON to move the glasses around so that he could view them from different angles and then examine them more closely.



8

26.     A little over three hours later, ALSTON brought the glasses to the ADC.

*Information About the ADC and INDIVIDUAL 1*

27.     The ADC houses federal prisoners through a contract with the United States Marshals Service.

28.     On October 21 and 22, 2024, INDIVIDUAL 1 was pending sentencing before a United States District Judge after he had previously pleaded guilty to a federal offense. I am the lead case agent in that matter.

29.     The ADC is located in the City of Alexandria, Virginia, within the Eastern District of Virginia.

*Alston and INDIVIDUAL 1 Previously Conspired to Smuggle Drugs Into a Prison*

30.     On or about November 25, 2022, ALSTON smuggled marijuana and Percocet into a Virginia prison and attempted to give it to INDIVIDUAL 1 in that facility's visitation room. INDIVIDUAL 1 was a prisoner in that facility at that time. A prison officer seized the contraband.

31.     Based on that conduct, ALSTON was convicted of Delivery of Articles to Prisoners, in violation of Virginia Code Section 18.2-474, in the Circuit Court for Brunswick County.

## CONCLUSION

32.     Based on the information provided in this affidavit, I submit that probable cause exists to believe that from at least on or about September 11, 2024, through at least on or about December 3, 2024, in the City of Alexandria, Virginia, within the Eastern District of Virginia, and elsewhere, MI'KAYLA ALSTON and INDIVIDUAL 1 conspired, confederated, and agreed, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, to provide Suboxone, a narcotic drug, to a prisoner of a facility in which persons are held in custody pursuant to a contract

or agreement with the Attorney General, in violation of Title 18, United States Code, Sections 371, and 1791(a)(1) and (b)(1); and that on or about October 21, 2024, in the City of Alexandria, Virginia, within the Eastern District of Virginia, ALSTON, in violation of Title 21, United States Code, Sections 841(a)(1) and 846, attempted to provide and provided Suboxone, a narcotic drug, to a prisoner of a facility in which persons are held in custody pursuant to a contract or agreement with the Attorney General, in violation of Title 18, United States Code, Sections 1791(a)(1) and (b)(1).

Respectfully submitted,

**JESSE ADAMS** Digitally signed by JESSE ADAMS
Date: 2024.12.09 03:24:12 -05'00'

Jesse A. Adams
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on December 9, 2024:

**Lindsey R Vaala** Digitally signed by Lindsey R Vaala
Date: 2024.12.09 12:00:51 -05'00'

Hon. Lindsey R. Vaala
United States Magistrate Judge

Alexandria, Virginia